IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: PARAQUAT PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to<br><br>*Richter v. Syngenta AG, et al.*<br>Case No. 3:21-pq-571-NJR | Case No. 3:21-md-3004-NJR<br><br>MDL No. 3004 |

# ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Compel Reopening of Frederick Richter's Deposition filed jointly by Defendant Chevron U.S.A. Inc. and the Syngenta Defendants. (Doc. 22). Plaintiffs Frederick Richter and Karen Richter oppose the motion (Doc. 24), and Defendants have filed a reply in support of their position (Doc. 25).

Plaintiff Frederick Richter was deposed on March 29, 2022, and subsequently served errata making 29 changes to his testimony. (*Id.*). Defendants argue that Richter's errata made three substantive changes regarding his Paraquat exposure. First, Richter changed the number of times he rode on a tractor while Paraquat was sprayed from 12 to 16 times, thus increasing his potential exposure. Second, Richter changed his testimony that his tenant farmer, Gary Wachtel, only used Paraquat when planting beans, which were on a rotation with corn and wheat. The errata now states that Paraquat was sprayed "every time" during Wachtel's first six years as a tenant farmer, regardless of the crop. Third, Richter changed his alleged reentry exposure from one to three times *total* to one to three times *each time Paraquat was sprayed*. Defendants argue these changes contradict Richter's sworn testimony or make the deposition incomplete or useless without further testimony. Therefore, Defendants ask

the Court to order the reopening of Richter's deposition so they can further question him on these issues.

In response, Plaintiffs argue that Richter's changes are consistent with his deposition testimony as a whole and are not so contradictory that they render the deposition useless or incomplete without further questioning. (Doc. 24). They assert that each change was necessary because of ambiguity inherent in Defendants' questioning, and Defendants could have followed up during the deposition to clarify Richter's answers. They argue that Defendants should not now get a second bite at the apple.

In reply, Defendants again assert Richter's changes contradict his sworn testimony and exponentially increase his alleged exposure to Paraquat. (Doc. 25). Thus, they argue, they should have the opportunity to question Richter on the substantive changes to his testimony.

## LEGAL STANDARD

Federal Rule of Civil Procedure 30(e) provides a deponent with 30 days after a deposition transcript becomes available to review the transcript and make "changes in form or substance" in a signed statement that explains the changes. FED. R. CIV. P. 30(a)(1). "A witness can make changes that contradict the original answers, and the reasons given need not be convincing." *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F. Supp. 1398, 1406 (N.D. Ill. 1993) (citing *Lugtig v. Thomas*, 89 F.R.D. 639, 642 (N.D. Ill. 1981)). A witness can even "change his deposition from what he said to what he meant," though the original transcript must be retained "so that the trier of fact can evaluate the honesty of the alteration." *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000).

A change in substance that "actually contradicts the transcript," however, "is impermissible unless it can plausibly be represented as the correction of an error in

transcription, such as dropping a 'not.'" *Id.* Furthermore, if the changes make the deposition "incomplete or useless without further testimony," the deposition may be reopened to allow additional questions made necessary by the changed answers. *Hawthorne*, 831 F.Supp at 1407 (citing *Lugtig v. Thomas*, 89 F.R.D. 639, 642 (N.D. Ill. 1981)).

## DISCUSSION

Defendants challenge only five of Richter's 29 changes. Those five changes are limited to three subjects: (1) Richter's exposure to Paraquat while riding on a tractor with his tenant farmer, Wachtel; (2) the regularity with which Wachtel sprayed Paraquat and on which crops; and (3) the amount of Richter's alleged "reentry exposure."

### *Exposure to Paraquat on Wachtel's Tractor*

During his deposition, the following exchange occurred regarding Richter's exposure to Paraquat while riding a tractor with Wachtel. Richter's errata changes are bolded and underlined.

> Q. Okay. Between '75 and '98, how many times did you think you actually rode the tractor with them while they were spraying paraquat?
>
> A. I would - - be nothing but a guess, but I would guess, like, 12. **16.**
>
> Q. 12 times, okay. And why did you ride the tractor with them while they sprayed?
>
> A. I liked to visit with them. I liked to take an interest.
>
> Q. Okay. Now, would you ride the tractor with them while they sprayed things other than paraquat?
>
> A. Yes.
>
> Q. Okay. So the 12 times, that's for everything they sprayed, not just for paraquat, right?
>
> A. Yes. **During the about 16 times I rode the tractor with them, they were**

>   **spraying paraquat plus something else.**
>
>   Q.   Okay. So what percentage of the time did they spray that they were spraying paraquat as opposed to something else?
>
>   A.   I can't tell you.
>
>   Q.   If it was a fourth of the time, then you would have only ridden with them three times when they were spraying paraquat?
>
>   A.   Right.
>
>   Q.   Does that sound right?
>
>   A.   Probably. **That math sounds right, but I rode with them about 16 times and all of those times they were spraying paraquat.**

(Doc. 22-3 at p. 6; Doc. 24-3 at p. 6). Richter explained that his answer that he rode the tractor 12 times was "nothing but a guess," and as he read the transcript, he realized he would have ridden on the tractor closer to 16 times. (Doc. 22-3 at p. 6). He also explained, with regard to the last change: "I thought the attorney for the defendants was asking me a math problem, but I realized when reading my deposition that I misunderstood his question, and that he misunderstood my prior testimony. As I testified on page 161-162, every time they sprayed beans or wheat, they used paraquat, and every time they sprayed corn during the first 6 years, they used paraquat, and sometimes, it would be mixed with something else." (*Id.*).

Defendants argue these changes create confusion and contradict other testimony made under oath. With regard to the number of times Richter rode the tractor, they claim the change raises questions, including why Richter realized 16 was more accurate than 12 and whether 16 is still "nothing but a guess." As to the second and third changes, they assert these responses are contradictory. In his second change, Richter claims Wachtel sprayed paraquat "plus something else" all 16 times Richter rode with him, but in the explanation to his third

change, Richter states that Wachtel sprayed paraquat "and sometimes it would be mixed with something else" each time Richter rode with him. Finally, Defendants assert, these changes must either contradict Richter's testimony that Paraquat was only used for beans, or it means that Richter only rode along with Wachtel when Wachtel was spraying beans and never corn or wheat, something Richter has never suggested to be true.

None of these arguments persuade the Court to reopen Richter's deposition. First and foremost, both Rule 30(e) and *Thorn* permit a witness to make substantive errata changes to his or her deposition. FED. R. CIV. P. 30(e)(1)(B); *Thorn*, 207 F.3d at 388; *see also United States ex rel. Robinson v. Indiana Univ. Health Inc.*, 204 F. Supp. 3d 1040, 1043 (S.D. Ind. 2016) (construing *Thorn* narrowly in the context of the sham affidavit rule). Furthermore, none of the changes actually contradict the transcript.

Richter was asked how many times he rode the tractor with Wachtel between 1975 and 1998, a span of 24 years. A difference of four tractor rides is not contradictory testimony, and, as Plaintiffs argue, Defendants made no attempt to determine how Richter came up with the number 12 during his deposition or what information he considered at that time. Defendants cannot now claim that additional questioning is required to understand why Richter changed his answer to 16 when they never asked why he originally answered 12.

The Court also agrees with Plaintiffs that Richter's second and third changes to his testimony are not contrary to the transcript and, instead, are the result of Defendants' ambiguous questioning. Richter was asked whether he would ride the tractor with Wachtel when he sprayed things other than Paraquat, to which Richter replied yes. However, Richter was never asked to clarify whether Paraquat was sprayed by itself, in combination with another chemical, or not at all on some of those trips.

Finally, Richter's explanation for his third change is logical. He realized, upon review, that he mistook defense counsel's question as a hypothetical, which is reasonable considering the question began with "If it was a fourth of the time, then . . . ." It is also apparent there was a misunderstanding about crop rotation and the number of times Paraquat was sprayed per year, as Richter later clarified for defense counsel. (Doc. 24-3 at p. 8). Defense counsel confusingly responded: "Okay. So all the math we were doing earlier, we would add in those years of some years, it would be twice?" (*Id.*). Richter's third change and his explanation for it serve to clarify the matter; they do not create a contradiction or otherwise make the deposition incomplete or useless without further testimony.

*Frequency of Paraquat Usage and for Which Crops*

Defendants next argue that Richter's errata increase the frequency of Wachtel's use of Paraquat, thereby increasing Richter's exposure. Again, Richter's errata changes are bolded and underlined.

> Q. Okay. And they use - - they did use several different kinds of herbicides at the farm, right?
>
> A. Yes.
>
> Q. Okay. But your testimony is, most of the time they used paraquat, or some of the time they used paraquat?
>
> A. To my knowledge, most of the time, they would use paraquat[.] **For the first about 6 years, they would spray paraquat every time. After that, it was just when they were planting beans both in spring and summer.**
>
> Q. Okay. And that's because they told you that?
>
> A. That's right.

(Doc. 22-3 at p. 5; Doc. 24-3 at p. 5). Richter explained that: "During my deposition, I was

Page 6 of 9

trying to explain, as I said on page 159, that there were sweet potato vines on the farm when they started farming and those were sprayed with paraquat. Here, I was asked whether 'most of the time they used paraquat, or some of the time,' and I answered 'most of the time.' I am clarifying that they sprayed paraquat every time they planted for the first 6 years, which is most of the time (whether planting corn or beans), then after that only when they planted beans (not corn)." (Doc. 22-3 at p. 5).

Defendants contend this is new and contradictory testimony, because Richter never testified that Paraquat was used "every time." Instead, he testified that Wachtel used Paraquat only with beans, and beans were part of a crop rotation with corn and wheat. Defendants claim they would have asked a number of follow-up questions if they had known Paraquat was used every time Wachtel sprayed for the first six years, thereby making his testimony incomplete.

Richter did, in fact, testify that Wachtel "sprayed paraquat every time they sprayed, because we had sweet potatoes, vines, and that would kill them down. . . . that was a wild weed, and they fought it from day one." (Doc. 22-5 at p. 12). Moments later, however, he testified that the sweet potato vines did not bother the corn, so Wachtel wouldn't spray Paraquat when he grew corn. (*Id.*). Richter's answers were confusing, but the time to clarify his testimony was during the deposition. To the extent Richter's errata muddles the issue further, Defendants are free to cross-examine him at trial regarding his original responses. The jury can then decide what weight to give both the original and modified testimony. *See Thorn*, 207 F.3d at 389 ("[F]ortunately the rule requires that the original transcript be retained . . . so that the trier of fact can evaluate the honesty of the alteration.").

*Reentry Exposure*

Finally, Defendants take issue with Richter's testimony regarding the number of times he would have walked into his field after Paraquat was sprayed. Richter testified as follows, with his change bolded and underlined:

> Q. For the years paraquat would have been sprayed, can you tell us how many of those years you would have walked out into that field within 12 hours of spraying?
>
> A. In the years that it was sprayed, how many times that I walked out there in the field?
>
> Q. Of those years, yeah, between '75 and '98. It wasn't every time, right?
>
> A. No.
>
> Q. Okay.
>
> A. I had three dogs. So I'm going to say one to three **times each time they sprayed**.
>
> Q. One to three times?
>
> A. Yeah.

Richter explained that his change was meant to clarify his answer because his testimony "could be understood as one to three times total, or one to three times per spray. I meant one to three times per spray." (Doc. 22-3 at p. 6; Doc. 24-3 at p. 7).

Defendants assert Richter's change to his reentry exposure is a major departure from his original testimony that he walked in the field one to three times total. The testimony itself, however, reveals Richter's confusion during the deposition. Defense counsel asked Richter, for the years Paraquat was sprayed, how many of those years would he have walked out into the field within 12 hours of spraying. In response, Richter repeated the question but phrased it differently: "In the years that it was sprayed, how many times that I walked out there in

the field?" Counsel then affirms Richter's misunderstanding of the question: "Of those years, yeah, between '75 and '98. It wasn't every time, right?" (Doc. 24-3 at p. 7).

Again, counsel had an opportunity during the deposition to rephrase the question and clarify Richter's testimony. Counsel repeated "One to three times?" but did not ask whether this was one to three times total or one to three times per year. In their reply, Defendants contend that Richter clearly understood the question to be "how many times" he walked in the field total, not how many "times *per spray*." But simply rearranging Richter's rephrasing of the question demonstrates his misunderstanding of it: "How many times did I walk out there in the field in the years that paraquat was sprayed?" He said "one to three," but he meant "one to three times per spray." And Richter clearly is permitted to change his answer from what he said to what he meant. *Thorn*, 207 F.3d at 389. Defendants' failure to clarify Richter's testimony does not warrant reopening his deposition.

## CONCLUSION

For these reasons, the Motion to Compel Reopening of Frederick Richter's Deposition filed jointly by Defendant Chevron U.S.A. Inc. and the Syngenta Defendants (Doc. 22) is **DENIED.**

**IT IS SO ORDERED.**

DATED:   February 14, 2023

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**